UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **STERLING KETTRELL RICHARDSON** | * | **CIVIL ACTION NO. 08-1176**<br>**Section P** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **MADISON PARISH CORRECTIONAL CENTER, ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion for summary judgment [doc. # 26] filed by defendants, Madison Parish Sheriff Larry G. Cox, Warden Jimmy Shivers, Major Antonio Johnson, Sergeant Barney, Head Nurse Lydia Smith, and Sergeant Cheatum. For reasons assigned below, it is recommended that defendants' motion for summary judgment be **GRANTED**.

### Procedural History

On August 11, 2008, pro se plaintiff Sterling Kettrell Richardson, formerly an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC),[1] filed the instant civil rights complaint pursuant to 42 U.S.C. §1983. Plaintiff contends that he was subjected to excessive force and inadequate medical care while confined at the Madison Parish Correctional Center (MPCC), Tallulah, Louisiana. Accordingly, he sued Madison Parish Sheriff Larry G. Cox, MPCC Warden Jimmy Shivers, Major Antonio Johnson, Sergeant Barney, Head

---

[1] Richardson was released from custody in July or August of this year.

Nurse Lydia Smith and Sergeant Cheatum for $5 million in damages.[2]

Plaintiff's original complaint – a rambling, almost incoherent statement of facts – read liberally, alleges the following:

(1) Plaintiff, an LDOC inmate, was confined to the MPCC in March 2008.

(2) On March 3, 2008, he claims that he was physically assaulted by Sergeant Barney because he changed settings on a television. According to plaintiff he was struck with a blow that forced him off of his feet and to the floor. While on the floor, plaintiff was the victim of obscene verbal abuse by Barney. Plaintiff eventually arose, and as he was proceeding to his dormitory, he was kicked from behind by Sergeant Barney.

(3) Plaintiff submitted a hand-written grievance to Major Johnson on March 4, 2008. As a result, Barney was suspended for one day.

(4) On March 4, March 5, and June 13, 2008, Barney used pepper spray against plaintiff "for revenge."

(5) On some unspecified day plaintiff – who suffers from epilepsy – was placed in confinement on "suicide watch." According to plaintiff, dilantin and phenobarbital were administered. He claims these medications caused him to have a seizure.

(6) He claims that his shoulders were injured, but it is unclear whether the injury occurred as a result of the assault or during a seizure episode.

(7) He claims that his grievances to the LDOC Headquarters were intercepted and destroyed.

(*See* Compl.).

On October 9, 2008, the undersigned directed plaintiff to amend his complaint to provide a more specific statement of facts. [doc. # 4]. Plaintiff responded to the order by submitting a 24 page hand-written pleading accompanied by a photocopy of an excerpt of the LDOC's

---

[2] Plaintiff also sued the Madison Parish Correctional Center and its medical department. However, the Clerk of Court "terminated" those parties pursuant to a December 16, 2008, order identifying the defendants to be served. [*See* doc. # 6 and ensuing docket entry].

Administrative Remedies Procedure. [doc. # 5]. Plaintiff's second pleading, like his first, is difficult to comprehend; however, he continued to complain about excessive force and inappropriate medical care.[3]

---

[3] A careful and liberal reading of the rambling pleading reveals the following claims and allegations:

1. Plaintiff claimed that no criminal charges were filed against him and that counsel was not provided to represent him; he also claimed that the defendants were aware of his medical condition – seizure disorder – because these same officials were responsible for providing him anti-seizure medication and had observed him having seizures in the past. He claimed that Nurse Smith confined plaintiff to an "unsafe and unobserved lockdown chamber" and that he was falsely accused of malingering on June 10, 2008. [*Id.*, p. 5].

2. Plaintiff claimed that he was physically abused on March 3, 2008 by Sgt. Barney and that his grievances – both at the local and state level – were ignored. [*Id.*, p. 6].

3. Plaintiff again complained that his grievances at the Terrebonne Parish Criminal Justice Complex, the Madison Parish Corrections Center, and the Forcht Wade Corrections Center were ignored. [*Id.*, p. 8].

4. Plaintiff again alleged that he has been epileptic for over 20 years; that he is therefore handicapped and disabled because as a result of the disease he has lost the use of both arms. He submitted to experimental surgery and physical therapy at some unspecified time at the Leonard J. Chabert Medical Center, Houma, Louisiana. [*Id.*, p. 9].

5. Screws were implanted in the bones of his arm and he was discharged with orders to avoid heavy lifting etc.; he was determined to be totally disabled. He claimed that he still suffers seizures and was attempting to obtain another neurological examination "before the medical incident of June 11th -12th, 2008 . . ." [*Id.*, p. 10].

6. Plaintiff described the incident of March 3, 2008. At that time, plaintiff was an LDOC inmate having been convicted of a felony offense. He was housed at the MPCC. On that date he attempted to ask jail personnel to change the channel on the prison dorm's television; his request was denied and he was ordered to return to the control booth. [*Id.*, p. 11].

7. Plaintiff placed his face near the control booth's "flap" and engaged in conversation with Sgt. Barney; without warning, Barney slammed the "flap" in plaintiff's face causing him to stagger backwards. Plaintiff was again summoned by Barney and as he entered the doorway, Sgt. Barney struck him a hard blow to his shoulders causing plaintiff to "slam"

On December 17, 2008, the undersigned determined that plaintiff sufficiently pleaded a

---

      into the wall and then to the floor. While he was on the floor, Barney threatened him and used an obscenity. [*Id.*, p. 12].

8.     Plaintiff curled up in a ball on the floor and begged Barney to refrain from hurting him further. Plaintiff also explained that he was disabled. Barney continued to use obscene verbal threats against plaintiff and ordered him to return to his dorm. As plaintiff arose and began walking to the dorm, Barney kicked him. [*Id.*, p. 13].

9.     Plaintiff was charged with a disciplinary rules violation by Head Nurse Lydia Smith and placed in a lock down cell. Plaintiff then had seizures that went unnoticed by corrections officers. The medical staff then accused plaintiff of attempting suicide to cover up the fact that they did not keep plaintiff under observation during his stay in lock down. Plaintiff was then transferred to Forcht Wade Corrections Center and then again to the Allen Corrections Center due to reports that he suffered mental problems. The reports from MPCC indicated that plaintiff attempted to commit suicide by jumping off of his bed in the lock down cell. [*Id.*, p. 14].

10.    Plaintiff claimed that this false report of attempted suicide will continue to have negative effects on his life – including the denial of parole status in September 2008. [*Id*. p. 15].

11.    Plaintiff submitted a proposed letter-head for an organization he named, "The Special Society of the Incarcerated United or SSIU." [*Id.*, p. 16].

12.    Plaintiff complained about being transferred from Forcht Wade Corrections to Allen Corrections in order to inhibit the actions of his organization, the SSIU. He also accused the defendants of physical and mental abuse, defamation, filing false reports, failing to investigate, jeopardizing human life, failing to follow legal procedure, malpractice, illegal scheme, breaking a contract and unprofessionalism. [*Id.*, p. 17].

13.    Plaintiff submitted a diary-calendar for June 6-17, 2008 in which he noted various events that occurred during his stay in lock-down at MPCC. [*Id.*, p. 18].

14.    Plaintiff provided a description of his diary-calendar and complained again about the events that transpired during his stay in lock down. [*Id.*, p. 19].

15.    Plaintiff then explained how he was subjected to suicide watch at Forcht Wade. He then accused Sgt. Barney of violations of the law and the constitution. [*Id.*, p. 21].

16.    Plaintiff concluded by providing information concerning his attempts to exhaust administrative remedies with respect to each of his current complaints. [*Id.*, pp. 22-23].

cause of action alleging excessive force and inadequate medical treatment. (December 16, 2008, Memorandum Order [doc. # 6]). Accordingly, the undersigned ordered service on defendants. *Id*. Defendants answered plaintiff's complaint, as amended, on February 19, 2009. [doc. # 16]. Following a discovery period, defendants filed the instant motion for summary judgment on July 21, 2009. Plaintiff has not filed an opposition to defendants' motion, and the time to do so has long expired.[4] (*See*, LR.7.5W, and Notice of Setting Motion [doc. # 27]). Accordingly, the matter is now before the court.

## Summary Judgment

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed R. Civ. P. 56(b). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2511 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings,

---

[4] In August 2009, plaintiff telephoned chambers and notified court staff that he was no longer incarcerated. Plaintiff indicated that he was aware of defendants' motion for summary judgment. Court staff advised plaintiff that the court had not received his opposition, and that he needed to file any opposition promptly. Plaintiff was further advised to contact the Clerk of Court to provide an updated mailing address. However, there is no indication that he did so. Instead, a law clerk employed by defense counsel recently contacted chambers, and in the course of the conversation, provided an updated address for plaintiff: 11558 Plank Road, Lot # 10, Baton Rouge, LA 70811. The Clerk of Court is directed to ensure that this, and future court filings, are forwarded to plaintiff at this *additional* address.

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate.  *Id*.  Indeed, in response to a properly supported motion for summary judgment, **the non-movant, may not rest upon the mere allegations or denials contained in his pleadings**, but instead must set forth, by affidavit or otherwise, the specific facts showing that there is a genuine issue for trial.  Fed.R.Civ.P. 56(e).  In other words, once the moving party points to an absence of evidence in the nonmoving party's case, the nonmovant must come forward with summary judgment evidence sufficient, such that if introduced at trial, it would suffice to prevent a directed verdict against the nonmovant.  *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

     In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S. at 255.  While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  There can be no genuine issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323. Nevertheless, "a motion for summary judgment cannot be granted simply because there is no opposition .... [t]he movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n3 (5th Cir.1995) (citing *Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir.1985).

## Analysis

As an initial matter, the court observes that because Richardson is no longer in custody, any potential claim for injunctive relief is moot. *See, Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988) (citations omitted). Accordingly, the court will focus upon Richardson's claims for compensatory damages.

**I.      Inadequate Medical Care**

As a convicted inmate, plaintiff's claim for inadequate medical care is analyzed under the Eighth Amendment's prohibition against cruel and unusual punishment. To establish liability, an inmate must adduce facts which "clearly evince" a serious medical need and the prison official's deliberate indifference to it. *Hernandez v. Velasquez*, 522 F.3d 556, 561 (5th Cir. 2008) (citation omitted); *see also Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285 (1976).

Deliberate indifference in the context of an episodic failure to provide reasonable medical care to a prisoner means that: (1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and

(3) the official's response indicates that the official subjectively intended that harm occur. *Thompson v. Upshur County, Tx.,* 245 F.3d 447, 458-59 (5th Cir. 2001). "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997); *see also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).

As stated above, to prevail on his medical claims, plaintiff must show that defendants were "deliberately indifferent" to his serious medical needs. Defendants have adduced what they purport to be a "true and exact copy of medical record information referable to the medical treatment rendered to and/or received by [plaintiff]." (Affidavit of Faye Maxwell, Def. Exh. C). However, based upon this court's prior experience with MPCC medical records in other cases, it is apparent that defendants produced a separately generated *summary* of plaintiff's medical records. (*See* Def. Exh. O). Nonetheless, defendants incorporated this summary into their statement of undisputed material facts, which remains uncontroverted, and is therefore deemed admitted. LR 56.2.

The medical records summary reveals that plaintiff was seen by medical staff at least 20 times during the approximately six and one-half months that he was confined at the MPCC. (*See* Def. Exh. O). The summary further suggests that the MPCC medical staff treated plaintiff's seizure disorder with medication, and addressed his other medical needs. *Id*. Of course,

8

continuous medical care will ordinarily preclude a finding of deliberate indifference on the part of prison officials. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Mayweather v. Foti,* 958 F.2d. 91 (5th Cir. 1992).

In response to defendants' motion, plaintiff has not adduced any evidence that a defendant herein actually inferred a substantial risk of harm due to plaintiff's alleged inadequate medical treatment, or that a defendant subjectively intended him to suffer harm. Rather, the evidence confirms that defendants diligently strived to provide plaintiff with requisite medical care. The fact that plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. Prisoners are not entitled to the "best medical care money can buy." *See Mayweather, supra*; *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981). The test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability. *Woodall, supra*.

**II.     Excessive Force**

To state a claim for excessive force, plaintiff must show that the force was not applied in a good-faith effort to maintain or restore discipline, but was applied maliciously and sadistically to cause harm, and that the injury he suffered was more than de minimis, but not necessarily significant, serious, or more than minor. *See Hudson v. McMillian*, 503 U.S. 1, 6, 10, 112 S.Ct. 995 (1992); *Gomez v. Chandler*, 163 F.3d 921, 923-24 (5th Cir.1999); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997). The factors to be considered in making this determination include, (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response.

9

*Gomez*, 163 F.3d at 923.

Plaintiff's excessive force claim appears limited to approximately two instances involving defendant Sergeant Barney. *See* discussion, *supra*. However, Sergeant Barney has executed an affidavit which states that he never used any inappropriate or excessive force during Richardson's confinement. (Barney Affidavit, Def. Exh. M). While Barney's affidavit is clearly conclusory, it nonetheless placed plaintiff on notice of his need to come forward with competent summary judgment evidence to support his claim. Plaintiff's ensuing failure to adduce any supporting evidence is fatal to his excessive force claim.

### III. Interference with Grievance Process[5]

Plaintiff's complaint intimates that defendants intercepted and destroyed his grievances. Prisoners, however, do not enjoy a federally protected right to a grievance investigation and resolution process. *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293 (1995). Any right of that nature is grounded in state law or regulation, and the mere failure of an official to follow state law or regulation, without more, does not violate constitutional *minima*. *See Taylor v. Cockrell*, 2004 WL 287339 at *1 (5th Cir. Feb. 12, 2004) (unpubl.) (holding that "claims that the defendants violated . . . constitutional rights by failing to investigate . . . grievances fall short of establishing a federal constitutional claim"); *see also Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 138, 97 S.Ct. 2532 (Burger, C.J., concurring) (applauding the

---

[5] Although defendants' motion failed to address this potential claim, the court may grant summary judgment *sua sponte* so long as the adverse party receives adequate notice. *Stingley v. Den Mar Inc.*, 2009 WL 2762374, *3 (5th Cir. Sept. 1, 2009) (unpubl.) (citing *inter alia*, *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 770-71 (5th Cir.2000)). The instant report and recommendation provides adequate notice to the parties. *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (citing *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir.1998)).

10

institution of grievance procedures by prisons but not suggesting that such procedures are constitutionally required); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (quotation omitted) (holding that a prison grievance procedure is not a substantive right and "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"); and *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) ("There is no legitimate claim of entitlement to a grievance procedure."). Accordingly, defendants' alleged "interference" with the grievance process did not violate the Constitution or laws of the United States.

**IV.     State Law Claims**

To the extent that plaintiff's complaint, as amended, sets forth additional claims arising under state law (e.g., defamation, filing false reports, failure to follow legal procedure, malpractice, illegal scheme, breach of contract, and unprofessionalism), the undersigned observes that when, as recommended here, all constitutional claims which conferred federal subject matter jurisdiction are dismissed, the court may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367. In fact, this is the general rule. *Priester v. Lowndes County*, 354 F.3d 414, 425 (5th Cir. 2004) (citation omitted). The twin interests of comity and efficiency dictate that any remaining state law claims be dismissed without prejudice.

28 U.S.C. § 1367(c).[6]

### Conclusion

For the above-stated reasons,

**IT IS RECOMMENDED** that the motion for summary judgment [doc. # 26] filed by defendants, Madison Parish Sheriff Larry G. Cox, Warden Jimmy Shivers, Major Antonio Johnson, Sergeant Barney, Head Nurse Lydia Smith, and Sergeant Cheatum be **GRANTED**, and that judgment be entered in favor of said defendants, dismissing with prejudice plaintiff's claims arising under the Constitution and laws of the United States. Fed. R. Civ. P. 56.

**IT IS FURTHER RECOMMENDED** that any remaining state law claims be DISMISSED, without prejudice. 28 U.S.C. § 1367(c).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

---

[6] The limitations period is tolled for a minimum of 30 days after dismissal. *See* 28 U.S.C. § 1367(d).

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 16th day of October 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE